UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>*Plaintiff*,<br><br>v.<br><br>VINCENT JONES,<br>*Defendant.* | No. 3:18-cr-211 (VAB) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

Vincent Jones ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Compassionate Release, ECF No. 37 (Aug. 25, 2020) ("Mot."); Sealed Mot. for Compassionate Release, ECF No. 39 (Aug. 25, 2020). The Government opposes his motion. Mem. in Opp'n, ECF No. 42 (Aug. 31, 2020) ("Gov't Opp'n").

For the reasons set forth below, Mr. Jones's motion for compassionate release is **GRANTED**.

His term of imprisonment is reduced to **TIME SERVED**, followed by a period of three (3) years supervised release to include the first six (6) months to be served in a halfway house in accordance with Mr. Jones's Comprehensive Release Plan. Second Supp. Reply, ECF No. 47 (Oct. 2, 2020) ("Supp. Reply"). Mr. Jones shall be released from the custody of the Bureau of Prisons ("BOP"), even if he is temporarily in the custody of the Connecticut Department of Correction, immediately in accordance with the terms of this Order.

Mr. Jones also shall comply with the conditions of supervised release, as modified by this Order.

1

I.   **BACKGROUND**

On September 18, 2018, a grand jury in New Haven, Connecticut returned an Indictment against Mr. Jones for two counts of bank robbery and one count of attempted bank robbery, in violation of 18 U.S.C. § 2113(a). Indictment, ECF No. 1 (Sept. 18, 2018).

On January 31, 2019, Mr. Jones pled guilty to one count of bank robbery and admitted the remaining conduct as part of his plea agreement. Plea Agreement, ECF No. 18 (Jan. 31, 2019).

On September 19, 2019, the Court sentenced Mr. Jones to a term of imprisonment of 63 months and three years of supervised release. J., ECF No. 35 (Sept. 19, 2019).

On August 25, 2020, Mr. Jones moved for a reduction of sentence. Mot.

On August 31, 2020, the Government opposed Mr. Jones's motion. Gov't Opp'n.

On September 15, 2020, Mr. Jones replied to the Government's opposition. Reply, ECF No. 43 (Sept. 15, 2020) ("Reply").

On September 25, 2020, the Court held a videoconference motion hearing. Minute Entry, ECF No. 46 (Sept. 25, 2020).

On October 2, 2020, Mr. Jones filed a supplemental reply outlining a proposed comprehensive release plan. Supp. Reply.

II.   **STANDARD OF REVIEW**

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons"; or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 422 F. Supp. 3d 613, 614 (S.D.N.Y.

2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

### III.    DISCUSSION

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, No. 19-3218-CR, -- F. 3d. --, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *see United States v. Gonzalez*, No. 3:15-cr-00223 (MPS), 2020 WL 5793304, at *1 (D. Conn. Sept. 29, 2020) ("[B]ecause [Mr.] Gonzales – and not the [BOP] – brings the instant motion, [the Court is] not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A) . . . , which the Second Circuit recognized as only applying to motions for sentence reduction brought by the BOP.") (citing *Brooker*, 2020 WL 5739712, at *8) (internal citations omitted).

Mr. Jones contends that "[t]he extraordinary and compelling circumstances of this case call out for court-ordered compassionate release." Mot. at 9. He argues that his underlying health conditions, including "[h]ypertension, obesity, type II [d]iabetes, and [s]chizoaffective [d]isorder place him at extremely high risk for severe illness or death should he contract COVID-19." *Id.* at 4. In his view, his "vulnerability to COVID-19 created by th[ese] medical condition[s] is heightened by the particular circumstances at Bridgeport Correctional," where he is housed. *Id.* at

8. He also argues that "because of his age, health, and focus on his future, he is far from a risk to recidivate." *Id.* at 10.

The Government opposes Mr. Jones's motion and argues that Mr. Jones is "a repeat offender who is a danger to the community, and he has been a danger to the community for many years." Gov't Opp'n at 6. The Government contends that reducing Mr. Jones's sentence "would be inconsistent with the sentencing goals set forth in Section 3553(a)." *Id.* The Government "acknowledges, and agrees, that [Mr.] Jones, because he suffers from certain medical ailments, is at higher risk for developing serious complications, should he contract COVID-19 while incarcerated." *Id.* at 4.

Mr. Jones replies that "[p]rior to and at sentencing, [he] admitted the offense in this case is serious in both its magnitude and scope," and that he "no longer poses any danger to the community, and in fact, the § 3553(a) factors weigh heavily in his release." Reply at 1. He contends that his "recognition of how he affected, and continues to affect[,] his victims underscores his understanding that he has an obligation to make them whole." *Id.* at 1–2. He clarifies that his "comprehensive release plan," which "includes his release to a halfway house for a substantial period of time where he will receive treatment, and seek medical care," "nullifies any dangerousness, and places him on the path of productivity." *Id.* at 2.

The Court will address each of the relevant factors in turn.

### 1. Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. May 1,

2020) (defendant serving a 180-month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions—Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, -- F.Supp. 3d --, No. 3:92-cr-0070, 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence."); *United States v. Zukerman*, -- F. Supp. 3d --, No. 16-cr-194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) ("Zukerman's age, combined with diabetes, hypertension, and obesity, satisfy" the requirement of an extraordinary and compelling reason to modify his sentence).

Mr. Jones argues that his "myriad diagnoses," including hypertension, obesity, type II diabetes and schizoaffective disorder, "place his life at grave risk from the COVID-19 pandemic." Mot. at 4. He contends that "[g]iven the very nature of prisons, particularly the current conditions at Bridgeport Correctional, it is impossible for [him] to practice physical distancing and protect himself from infection." *Id.* at 7. He argues further that "[w]hile incarcerated, [he] cannot practice regular hand hygiene." *Id.* at 8. He also contends that "[a]s of May 15, 2020, 62 inmates at Bridgeport Correctional tested positive for the coronavirus," and that "COVID-19 is materially

5

affecting operations [there]." *Id.* at 6 (citing *Health Information and Advisories*, CONNECTICUT STATE DEPARTMENT OF CORRECTION, https://portal.ct.gov/DOC/Common-Elements/Common-Elements/Health-Information-and-Advisories (last visited Sept. 22, 2020) ("DOC, Health Information and Advisories").

The Government "acknowledges, and agrees, that [Mr.] Jones, because he suffers from certain medical ailments, is at higher risk for developing serious complications, should he contract COVID-19 while incarcerated." Gov't Opp'n at 4. The Government contends that there is a "divergence of views within the district" on whether the circumstances alleged by Mr. Jones "constitute extraordinary and compelling reasons warranting compassionate release to home confinement." *Id.* at 4–5.

Mr. Jones replies that "[g]iven the state of the pandemic and the coming fall and winter months, [his] continued incarceration at Bridgeport Correctional or the Bureau of Prisons [] further places his life at risk." Reply at 2. He reiterates his argument as to conditions at Bridgeport Correctional, noting that "as of August 24, 2020, a total of 139 Bridgeport Correctional inmates tested positive for the coronavirus." *Id.* (citing DOC, Health Information and Advisories).

The Court finds that Mr. Jones has demonstrated extraordinary and compelling reasons for release.

Courts in this District, and other district courts in this Circuit, have held that the same underlying medical conditions, alone or separately, combined with the risk of coronavirus, constitute extraordinary and compelling reasons for release. *See United States v. Colvin*, 451 F. Supp. 3d 237, 240 (D. Conn. 2020) (finding that a defendant with "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19," had demonstrated extraordinary and compelling reasons" for release (internal quotation marks

6

omitted)); *United States v. Sedge*, 16-cr-537 (KAM), 2020 WL 2475071, at *3 (E.D.N.Y. May 13, 2020) ("Given that the defendant is over 50 and has demonstrated existing medical conditions that would place him into a high-risk category including hypertension, hyperlipidemia, and coronary artery disease, defendant has demonstrated that he is at a higher risk for suffering life threatening complications from COVID-19."); *United States v. Pena*, -- F. Supp. 3d --, No. 15-cr-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (defendant had hypertension and hyperlipidemia, and the district court recognized the heightened risk hypertension poses); *see also United States v. Scparta*, -- F. Supp. 3d --, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (defendant suffered from "hypertension, sleep apnea, high blood pressure, and high cholesterol" and the court recognized that the CDC "has identified hypertension as a comorbidity that increase the likelihood of serious risk from COVID-19"); *United States v. Sawicz*, -- F. Supp. 3d --, No. 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) ("While the defendant's hypertension does not place him squarely within any of the [Sentencing Guidelines's] Policy Statement's definitions of 'extraordinary and compelling reasons,' the defendant asserts that the COVID-19 pandemic, combined with his particular vulnerability to complications from COVID-19 . . . constitutes an 'extraordinary and compelling reason' for his release. . . . [The court] agree[s] with the defendant. . . .").

Accordingly, the Court finds extraordinary and compelling reasons exist.

### 2. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the

7

defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.

Mr. Jones "remains detained at Bridgeport Correctional Center, serving [a] federal sentence as a holdover inmate, because of the pandemic." Mot. at 3. He acknowledges that "[h]e has not made a request to the Bridgeport Correctional warden for compassionate release, because the Connecticut Department of Corrections warden does not have any authority to act on such a request." *Id.*

The Government does not discuss whether Mr. Jones has exhausted his administrative remedies in its memorandum of law.

This Court "need not decide in this case whether [Mr. Jones] has exhausted his administrative remedies, or whether he is excused from doing so, because the Government has forfeited the issue." *United States v. Tyson*, No. 13-cr-002, 2020 WL 3451694, at *2 (D. Conn. June 24, 2020). "Although the Government mentions the exhaustion requirement in its brief in summarizing the applicable law," Mot. at 2, "it makes no argument that [Mr. Jones] has failed to exhaust or that he should be excused from exhausting under these circumstances." *Tyson*, 2020 WL 3451694, at *2.

As the Government has not argued that Mr. Jones failed to exhaust or that exhaustion is otherwise a barrier to relief, the Court continues to address this motion on the merits.

### 3. Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the

8

community[,]' . . . and only after considering the factors listed in 18 U.S.C. § 3553(a)," *McCarthy*, 2020 WL 1698732, at *5 (alterations in original).

Mr. Jones contends that "because of his age, health, and focus on his future, he is far from a risk to recidivate." Mot. at 10. Mr. Jones argues further that "[g]iven the current circumstances, [he] will not be able to afford himself of any . . . prison programs or training opportunities" at Bridgeport Correctional if not released. *Id.* at 12.

He "asks the Court to consider he has a plan for his future," and notes that "[a]t his sentencing, he wrote [that] . . . [he] would like to find clean and sober living affording [him] the best chance at success in staying clean and regaining the independence, strength and confidence lost as a result of [his] drug use." *Id.* at 11. He notes that "[u]pon release, [he] would like to continue with recovery, as well as mental heath treatment," alleging that he intends to after his time in a treatment program "work on opening an automotive business, as well as continue [his] education about the automotive field." *Id.*

Specifically, Mr. Jones's comprehensive release plan "proposes that the Court reduce his sentence to a period of time served, followed by a period of 3 years supervised release to include the first 6 months to be served in the halfway house." Supp. Reply at 2. Mr. Jones notes that he has been accepted to two programs, including the APT Foundation and the Salvation Army. *Id.* at 1–2. He argues that upon release from a halfway house, he will participate in the APT Foundation's residential program and subsequently hopes to enter a New Haven-area sober house that will provide additional residential services and programming. *Id.* at 3.

The Government contends that Mr. Jones "has not," and "cannot," "establish[] that he is not a danger to the community." Gov't Opp'n at 5. The Government notes that "[Mr.] Jones was sentenced to 63 months of imprisonment in this case because he committed serious offenses, and

9

because his criminal record dates back 35 years." *Id.* at 6. The Government argues that "[h]e has been convicted for robbery, sale of narcotics, possession of narcotics, larceny, escape and burglary," and "has no employment history in large part based on his extensive criminal history and prior terms of incarceration." *Id.* The Government also contends that Mr. Jones "has served less than two years of the 63-month sentence—a sentence that was below the applicable guidelines range," and "[r]educing [his] sentence to home confinement would undermine the sentencing goals that his 63-month sentence was designed to promote." *Id.* at 6–7.

Mr. Jones responds and reiterates that though he "acknowledge[s] he is a repeat offender," and the "Presentence Report underscores this and highlights his 64 disciplinary infractions while in the State of Connecticut Department of Corrections," he "has had none" since 2015. Reply at 2. He "asks the court to view his extensive criminal conduct through the lens of one who [was] fueled by long-standing drug addiction, and undiagnosed behavioral health concerns." *Id.* He contends that his "comprehensive release plan nullifies any dangerousness, and places him on the path of productivity." *Id.*

On balance, the Court agrees.

"Courts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, the individual's danger to the community may ultimately outweigh any health concerns and the balance of factors would weigh against release." *United States v. Belle*, No. 3:18-cr-117-(VAB)-1, 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) (collecting cases). Mr. Jones's current term of incarceration stems from the fact that he "took money that belonged to or was in the care, custody, control, management or possession of the bank from the person or in the presence of another," and he "did so by force or violence or by acting in an intimidating manner." Plea Agreement at 1 (citing 18 U.S.C. § 2113(a)).

At sentencing, Mr. Jones's Criminal History Category was V. *Id.* at 4. Indeed, since 1990, Mr. Jones has spent approximately 24 years incarcerated. Pre-Sentence Report ¶¶ 45–93. He "committed the instant offense while under a criminal justice sentence, specifically, while on special parole for Possession of Narcotics and Sale of Hallucinogen/Narcotics." *Id.* ¶ 95.

As "[t]he nature and circumstances of Mr. Jones's offense are undoubtedly serious," this "may weigh against granting compassionate release." *United States v. Goins*, No. 11-cr-20376, 2020 WL 3064452, at *6 (E.D. Mich. June 9, 2020) (citing § 3553(a)(1)). But several of the remaining § 3553(a) factors weigh in favor of granting Mr. Jones's motion.

Mr. Jones's personal history and characteristics support release. His "most relevant personal characteristic is his vulnerability to COVID-19 . . . and that vulnerability strongly supports release now." *Id.* And the record makes clear that Mr. Jones's "criminal history was driven, in part, by his addiction to, and abuse of, controlled substances, and he has expressed an interest in obtaining intensive treatment . . . for his substance abuse issues." *Id.*; Mot. at 10–11. Mr. Jones argues that given the COVID-19 pandemic, he "will not be able to afford himself of any of the prison programs or training opportunities" available in prison facilities to address these issues. Mot. at 12.

The Court also notes that Mr. Jones remains a holdover inmate at Bridgeport Correctional Center and has not yet been moved to a federal facility under the supervision of the Bureau of Prisons, which has begun "operating [its facilities] under modified procedures to mitigate the spread of COVID-19." *United States v. Howell*, No. 3:17-cr-151 (SRU), 2020 WL 5548836, at *4 (D. Conn. Sept. 16, 2020) (citing *BOP Implementing Modified Operations*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp)).

Under the BOP's COVID-19 procedures, "[s]ocial visits are suspended, [a]ll newly-arriving BOP inmates are processed throughout quarantine or jail/detention sites and screened for COVID-19 exposure risk factors and symptoms, [a]symptomatic inmates with exposure risk factors are quarantined, and [s]ymptomatic inmates with exposure risk factors will be isolated and tested for COVID-19 . . . ." *Id.* (alterations in original) (internal quotation marks omitted). "The movement of prisoners is also restricted, and enhanced screening of staff, such as self-reporting and temperature checks, is being performed at all BOP locations." *Id.*

But the absence of any record evidence of these COVID-19 protocols at Bridgeport Correctional weighs in favor of a demonstration that Mr. Jones's "institution is incapable of managing the COVID-19 pandemic or of providing proper care should he contract the virus . . . ." *Id.* at *3 (citing *United States v. Gagne*, 451 F. Supp. 230, 234-35 (D. Conn. Apr. 2, 2020); *United States v. Gamble*, 3:18-CR-0022-4 (VLB), 2020 WL 1955338, at *5 (D. Conn. Apr. 23, 2020)).

Mr. Jones also has provided a comprehensive release plan that the Court finds will help to mitigate against any danger to the community Mr. Jones may pose and to provide Mr. Jones "much-needed treatment for his mental health or substance abuse issues," Supp. Reply at 1, treatment currently unavailable to him and without any indication of when these services would be available to him, given the duration of the current pandemic.

"Two community based residential treatment programs have accepted Mr. Jones," including "[t]he APT Foundation, an interdisciplinary treatment facility, which offers psychiatric services, behavioral intervention, individual counseling, group therapy, recovery skills, and adult education," *id.*, and "[t]he Salvation Army," which "provides individual counseling, groups, educational opportunities, and work therapy to prepare people to reconnect with their community," *id.* at 2. Mr. Jones proposes that "the Court reduce his sentence to a period of time served, followed

by a period of 3 years supervised release to include the first 6 months to be served in the halfway house." *Id.* He proposes that "[u]pon release from the halfway house, [he] will participate in the APT Foundation's residential program until his successful completion," and notes that his counsel has contacted "Believe in Me," "a New Haven area sober house that will provide a residence and programming for up to 3 months . . . post the APT Foundation [program]." *Id.*

Mr. Jones also notes, and the Government does not contest, that though he has a troubling history of disciplinary infractions while incarcerated, "he has had none" since 2015. Reply at 2.

As a result, "the risk to [Mr. Jones's] health and his recent positive behavioral trend," as well as the uncertainty surrounding COVID-19 precautions at Bridgeport Correctional and Mr. Jones's detailed comprehensive release plan, which will provide him the treatment he requires, "make his case for a reduction in his term of imprisonment extraordinary and compelling" despite any § 3553 factors that may weigh against release. *See United States v. Johnson*, No. 3:18-cr-162 (MPS), 2020 WL 4449797, at *4 (D. Conn. Aug. 3, 2020) (granting compassionate release where the defendant had served just 24 months of his 78-month sentence). In addition, the Court will modify the terms of his current conditions of supervised release and require monthly appearances before this Court, following his release from any and all in-patient treatment programs, until the Court deems such additional supervisory efforts no longer necessary.

Accordingly, having considered these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that the circumstances weigh in favor of immediate release.

## IV.  CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **GRANTED**. Mr. Jones's term of imprisonment is reduced to **TIME SERVED**, followed by a period of three (3) years supervised release to include the first six (6) months to be

13

served in a halfway house in accordance with Mr. Jones's Comprehensive Release Plan. Supp. Reply, ECF No. 47.

It is **ORDERED** that Mr. Jones be released to the custody of the halfway house, and upon release from the halfway house, that Mr. Jones participate in the APT Foundation's residential program until his successful completion and, if possible, that Mr. Jones participate in the "Believe in Me" residential programming after completing his time at the APT Foundation, in accordance with the Comprehensive Release Plan. *Id.*

Within fourteen (14) days of release from any and all in-patient treatment programs, Mr. Jones shall contact the U.S. Probation Office for evaluation and possible inclusion in one of the District of Connecticut's reentry or support court programs. Mr. Jones also shall appear before this Court every month following his release from any and all in-patient treatment programs. His initial such appearance shall be within thirty (30) days of his release from any and all in-patient treatment programs, and such appearances shall continue monthly, unless and until otherwise instructed by this Court. All other conditions of supervised release from his September 19, 2019, judgment shall remain in effect.

Upon release to the halfway house, Mr. Jones shall self-quarantine for fourteen (14) days as circumstances allow. He must also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Connecticut Department of Correction and the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of October, 2020.

                                                      /s/ Victor A. Bolden
                                                      Victor A. Bolden
                                                      United States District Judge